The next case on our calendar today is Suarez v. Citibank. Eric Chaffee May it please the court, my name is Eric Chaffee, I'm here on behalf of the appellants. This case involves two admittedly unusual procedural issues. The first is whether to certify to the New York Court of Appeals a state law question on which reasonable jurists could differ, notwithstanding the fact that this court has ruled on that question and we concede fully that it's binding precedent. But that precedent is not binding on the New York Court of Appeals, which for practical purposes is the final arbiter of such issues. The second question is whether to facilitate, in one of three ways, en banc reconsideration of the Article III injury in fact ruling in Rajamin, which I contend simply misconceives the notion of an injury in fact and in fact incorporates the notion of legal injury rather than factual injury. And you understand, of course, that our panel is bound by Rajamin. Absolutely. We have conceded that you are bound. We have argued quite candidly that we just think it's wrong and offered three ways of addressing the fact that the panel is bound. The first way, which is admittedly unusual, but is what is used in the D.C. Circuit on occasion, is the so-called irons footnote, where you, if you agree with me, that the decision on Article III was mistaken, you draft the footnote, you circulate it to the full court, and absent objection or with full endorsement, that then is articulated in the footnote. That's how the D.C. Circuit handles things. That isn't really how we handle things. Absolutely. I do not suggest for a moment that you are obliged to follow that procedure. I am offering up ways that the panel, while still respecting precedent, may address this issue through en banc reconsideration. That is within your intrinsic power. I make no pretense that you're obliged to follow it, and hence I've offered two other ways. At the end of the day, whether it's a footnote or a mini-en banc or whatever you call it, it still requires an en banc. Absolutely. I fully concede that. And the last of my suggestions was perhaps the most common route for this, is that on occasion when judges agree that earlier precedent perhaps was misguided or mistaken, they comment on that but nonetheless follow it, as they're obliged to do for precedent reasons, but the comment itself at least facilitates the possibility of en banc review once a petition has been filed. Tell me why the void versus voidable issue for New York trust law affects standing in Rajaman. It affects prudential standing rather than Article III standing, and that is because prudential standing all turns on the notion of you are seeking to enforce someone else's rights, and that is only someone else's rights if it is voidable, i.e., voidable at the insistence of the beneficiary. If it is void as to everyone, you are enforcing your own rights, and I think the Ivanova case in California, which did not reach the merits of whether it was void or voidable, but discussed the paradigm of why you would have standing to challenge something that was void but not something that was voidable, I think is an extremely well-written articulation of how a void contract anyone can seek to challenge, whereas a voidable one only the intended beneficiaries perhaps or the parties could seek to challenge. And our contention, admittedly dependent upon state law, is that this is a void contract, not merely a voidable contract. I'm sorry, just to get the procedural context correct, there's a similar case called Tran? Yes, absolutely. And another panel of our court affirmed that on the basis of Rajaman? Primarily affirmed, absolutely. So you already have six members of the court, I guess, who have affirmed Rajaman. I'm not sure I would view Tran quite in that manner. So once Rajaman came down, it's binding precedent. I don't think the Tran's court's application of binding precedent necessarily means they endorsed the reasoning of Rajaman. It merely means they did what courts normally do, which is apply precedent. So to suggest that six members agree with Rajaman? Fair enough, but you want us to do what courts ordinarily don't do. I think I've been unusually candid in admitting that I'm asking you to do something unusual. I think on the state law question, it's actually not that odd a request. This is an important question of state law. It affects contracts throughout the country and in multiple courts. It involves issues of public policy. It is contrary at least to the facial plain meaning of the statute. I understand plenty of lower New York courts have nonetheless reached that conclusion. But at the end of the day, this is functionally equivalent to a cert petition. That at some point, the final arbiter really is the New York Court of Appeals, and if we're going to apply this everywhere and other courts are just going to reflexively follow it as precedent, it might be nice if that precedent came from the true arbiter. I'd be interested. Do you know of any of our cases in which there was a binding precedent and the panel nonetheless sent the same legal question to the court? My understanding, and forgive me for not having the name at the tip of my tongue, is that in fact right now before the New York Court of Appeals is a case of that nature, where there was longstanding Second Circuit precedent, but it nonetheless got certified to the New York Court of Appeals. I was told this last night and did not. There's an insurance case actually, a reinsurance case that I'm familiar with, but the precedent was 30 years old and I think there were a number of changes. And so it was misinterpreted potentially and unclear. Fair enough. Like I said, I apologize for not having more of the details at hand. Even though Rajmeen is relatively recent, I mean, in some ways, to my mind, that makes it a little bit easier to send it up to the New York Court of Appeals. My fear is that this issue will go away simply because everyone will just apply Rajmeen, Rajmeen, Rajmeen, and it will never get to the New York Court of Appeals in any other procedure. Look, if they agree that Rajmeen was rightly decided, this is virtually costless. You send it over. You say, would you answer this question? They say no. End of discussion. And then that's that for us on the state law question. Is your principal case still Glaske from California? It's the reasoning of Glaske. I understand that courts have rejected Glaske. I understand that they have decided to follow Rajmeen rather than Glaske. This is not a panel that said that Glaske is against the overwhelming weight of case law in summary order. It was a remarkably summary sentence that said that without any reasoning whatsoever. So, I mean, if you go to— You were wrong then. Well, that's certainly my contention. But I don't deny that other courts are following it, look at Rajmeen, look at a bunch of lower court cases and say, sure. But I don't think in a single one of those cases do they actually address the substance of the argument I'm making as to why this is uncertain. There are a lot of New York appellate division cases that followed Rajmeen, too, after Rajmeen, right? Yes, absolutely. My only point is not that there are plenty of courts that disagree with me. It's that there at least have been a number of jurists who agree with me. And I think on the logic of it, I have a very persuasive argument to make to the New York Court of Appeals. And at the end of the day, some of my argument depends on judicial policy and public policy questions that are really fully within their discretion to rule on. And I merely am asking that you give them the opportunity to do that. And if they think I'm mistaken or wrong or are simply uninterested, then this is a one-sentence letter back saying no. And I don't think you really impose any costs on them. If they choose to take it, of course, that suggests they're interested. I don't know if we should get into it here, but the problem is we don't send it to them. They've asked us, should we respond affirmatively? Even if there is some pressure to say yes to this court out of respect, parallel respect, I think this is a question that applies all around the country, that is affecting numerous cases, as you've seen in the briefs, and that it's only right that for such an important issue that affects so many contracts that are identical, that the final arbiter would have a say in it. You have three minutes for rebuttal. Thank you very much. Thank you. Mr. Garbutt. Good morning, Your Honors. You know the podium also goes up. Yeah, always happens to me. The podium goes up. There's a button on your lower right. Oh, I'm good. May it please the Court, I'm Bernie Garbutt from Morgan Lewis. I'm here on behalf of Deutsche Bank National Trust Company as trustee, and I'm also arguing on behalf of the other defendant trustees. Judge Carney, you're correct that this issue was raised in Tran, but not only was it raised in Tran, there was also a petition for a rehearing en banc in Tran, and that was denied by this court. For appellants to be right and prevail here, 15 judges on this court have to be wrong. It's been known to happen. Well, but two of them are on this panel right now. There's been five decisions after Roggeman that have examined the reasoning of Roggeman and have agreed with it. In the McCarty case, Judge Sack, you agreed with Roggeman after an analysis in that decision. In the Nucci case, Judge Roney, you agreed with Roggeman after analysis of that decision. And as you pointed out, the Nucci case also examined Glaske, rejected Glaske, as have 14 other California Court of Appeal decisions. Frankly, there's really no discord about the correctness of the Roggeman opinion. If you, you know, key cite it on Westlaw, no other decisions are disagreeing with it. If it was so incorrect, you would think that other judges on this court would have found some reason to criticize it. According to appellants, there's plenty of ways that a judge on this court can express dissatisfaction with a prior opinion and yet affirm it. None of that happened. There wasn't a footnote. There wasn't a referral to en banc hearing. None of that happened. The reasoning is that it's a solid decision based upon prior New York precedent, Court of Appeals decisions. And frankly, it's based on pretty simple precepts of law. It's an interpretation of a contract, the pooling and servicing agreement. It's the simple point that if you're not a party to a contract, you don't have standing to challenge it. And it's another trustworthy point that says, if you're not a beneficiary of a trust, you don't have standing to challenge the trustee's conduct. The reason for that is, is that if- I should have asked the other side, but what is the theory as to who was hurt as a result of this so-called breach of contract? Well, Your Honor, we would say that the plaintiffs were not hurt. That's why I'm asking. Right. Obviously, we think that the facts are such and the allegations are such that they were not harmed. Okay. And the reason is, is that they took out a mortgage. They obligated themselves to pay a loan. They defaulted on that loan. Some of them were foreclosed upon. Some of them are still in limbo. They made payments, and they claimed that they were paying the wrong party. And we submit that it's pretty- Credit for the payments, nonetheless. They would, yes. But we submit that, you know, their mortgage loans were properly conveyed to the trustees for the benefit of the certificate holders of the trust. And that's made clear in the Roggeman decision. Roggeman goes through this in great detail. It's a lengthy decision, as I'm sure you're aware, examining the various different theories that the plaintiffs in the Roggeman case put forward. And it's the three theories that I'm covering right now. It was a contract theory. It was a trust theory. And then there was this theory of, well, you don't own my loan, which has basically been rejected by almost every court in the country. As I said, the concepts, the state law concepts- Well, let me back up for a second. There's the constitutional issue, which obviously does not need to be referred to any other court. This court has the power to hear that. The New York State Court of Appeals has nothing to say to this court about how to interpret the U.S. Constitution. On the state law issue, as I said, Roggeman relied upon ten state law cases, four of which were from the Court of Appeals. As Judge Droney said, since then, three appellate division cases in New York have agreed with the analysis of Roggeman. And as I said before, not a single case has criticized it. I'll say one point here that I think needs to be addressed. There's an analogy to a mobster intercepting rent between a tenant and the landlord. And, frankly, that's insulting to the trustees, but it also proves the point that it's an inept analogy. Unlike the mobster, the court in Roggeman found, and it's supported here, that the loans at issue, the mortgages at issue, were conveyed to the trustees for the trust at the time of the pooling and servicing agreement. And, therefore, some subsequent recordation really doesn't matter. And, therefore, we're not like a mobster stealing someone else's rent before it gets to the landlord. We're entitled to those payments. The second point is if the mobster stole a tenant's rent before it got to the landlord, the landlord would come looking for that rent. It doesn't expunge the debt. Here, plaintiffs fail to allege that anyone other than us ever came to them looking for the money. And, in fact, they admit that in their brief. They don't assert that they've made double payments. They don't assert that someone else has come looking for their rent or, in this case, their mortgage payment. And, therefore, there is no injury. They paid someone. The trustees were entitled to those payments. They don't allege that someone else is trying to collect or that they paid twice. And, therefore, they have not been injured. And with that, since I've been here three times on this issue, I'm going to sit down. Thank you very much. Mr. Jaffe, you have three minutes for rebuttal. So just a few points. Fifteen judges of this court have not agreed with Rajman. They've applied to Rajman as precedent as is perfectly normal. I don't know if in any of those cases those judges were asked to reconsider Rajman or overrule them. You have denied rehearing en banc. But I think, as this panel knows and as anyone who seeks cert knows, denial of rehearing en banc is not precedential. It doesn't speak to the merits of a case. It speaks to all kinds of things, including the existence of alternative reasons for the same result that would stop you from reaching the relevant question. And that, by the way, is true of many other cases that this arises in where there are lots of reasons why those cases lose. They may never get to full appellate review. The second point is this is not a contract case. This is an estate and trust case. Our argument is that trust law is different than contract law. And that's an argument we would make to the New York Court of Appeals, and I think they would find it persuasive. That's all we're asking is to get the opportunity to do that. On whether we're hurt, going to the Article III standing question, I think it mis- There is a question of how much we were damaged. I don't think there's any debate that that is a litigable question, and we'll have that fight eventually. It is not an Article III standing question. Much like simultaneous concurrence in torts when two people shoot you and one guy says, well, I didn't. You weren't injured because he would have killed you anyway. Or a rock is falling on you and he shoots you and he says, well, you weren't injured. No, you were injured if the bullet hit you and killed you. And I think that is just Hornbook law in torts. What was the injury? So there are lots of cases in tort law where there are concurrent causes. I'm familiar with those, but how were your clients injured? Their houses were foreclosed upon. The fact that it might have happened anyway through another mechanism, i.e., through the originator. They were in default on their loan payments, right? That's right. But speculating on what would have happened thereafter, whether the loans would have been restructured, whether they — that's just speculation. And we say this in our brief. It is utter speculation. But the injury, in fact, is what did happen, not what might have happened or what might have happened in an alternative scenario. What did happen is they paid money to someone we allege didn't own the loan, and they were foreclosed upon. That is an immediate injury. Are you saying — I know we shouldn't speculate, but are you saying that whatever might have happened, that would not have happened? What happened — I'm saying that's an issue for damages and for proximate cause in the later trial. We have no evidence on that, but it is an evidentiary question. It is not a standing question. The only evidence for standing, much like in Culhane. In Culhane, Judge Selya, with Justice Souter on the panel, a circuit justice, said they took her house. She was injured. Whether or not it was a legal injury in the sense that they had a right to take her house, so it's okay, is not the question for Article III purposes. It may be a question on the merits. It may be a question as to damages. But remember, we're bringing a RICO claim. The argument is that they defrauded us, and the fact that somebody else could have nonfraudulently sought the same remedy doesn't answer whether they committed fraud. And the fraud all turns on whether they owned the loan, right? That's why, ultimately, ownership of the loan matters. It's because if you didn't own the loan and you said you did, that's fraud. So that would be my argument as to why this just misconceives the very limited Article III burden. Obviously, my clients are interested enough to want to litigate this, and that's the point of the Article III, you need to have an actual injury. It's not like I might go to Africa one day and look at the elephants, but I don't know. They took these folks' houses and their properties. That's injury. Thank you. You have the argument. All right. We'll take the matter under advisement. Thank you.